MAYOR & ALDERMEN OF THE CITY OF SAVANNAH *v.* ELLINGTON COMPANY *et al.; et vice versa* (two cases).

Nos. 9371, 9372. JUNE 13, 1933.

*John J. Bouhan, Marvin O'Neal Jr.,* and *David S. Atkinson,* for City of Savannah.

*Connerat & Hunter,* contra.

RUSSELL, C. J. On January 13, 1932, the Mayor and Aldermen of the City of Savannah passed an ordinance which in its first section ordained that it should be unlawful for any person, firm, association, or corporation to use the streets of the City of Savannah for the purpose of transporting passengers or goods for hire from a point without the County of Chatham into or through the City of Savannah, except upon conditions stated in the ordinance and

the payment of certain street-tax fees, levied as stated in the caption of the ordinance, for the purpose of maintenance, repair, and upkeep of the city streets. The second section of the ordinance requires that before any motor carrier by bus or truck, or other motor vehicle, may operate on the streets of Savannah from a point without the County of Chatham into or through the City of Savannah, it shall file an application showing the routes proposed to be used, the number of buses or trucks to be operated, the manufacturer's name, serial number, company number, State-license number, capacity and weight of each vehicle, etc., which will be submitted to a committee of two chairmen of committees and the mayor, who shall make such changes in the routes and schedules as in their opinion the interest of the public safety and convenience may require. The city council is to consider their report at the next meeting after the same is received; and if it is approved, a certificate shall be issued by the clerk of council, and the carrier shall pay the prescribed street tax and have issued to him a city carrier-tax plate, inscribed : "Savannah, Georgia, 1932. Motor Carrier No. ....." Section 3 contains regulations as to motor common carriers of passengers, whether interstate or intrastate. Section 4 deals with the same subjects, applicable to common carriers of goods. Section 5 deals with carriers for hire of passengers, not common carriers, and provides that these shall pay the same street-tax assessment as common carriers of passengers; but if the carrier does not operate over a fixed route, the committee handling the application shall fix the street-tax assessment upon a fair average route mileage. Section 7 deals with carriers of goods, not common carriers, but they are to pay the same street-tax assessment in the same manner as common carriers of goods; but if the carrier does not operate over a fixed route, the committee will fix the street-tax assessment on a fair mileage average. Under the provisions of section 8, relating to interurban motor carriers, motor vehicles not operated in connection with street-railroad companies are subject to the same regulations as motor carriers operated from points without Chatham County; but the tax per mile of streets over which such motor vehicles shall be operated is $20 per mile or fraction thereof, instead of the higher rate for mileage prescribed by the preceding sections.

Unfortunately for the fate of this ordinance, the General Assembly, on August 27, 1931, had incorporated in section 18 of the

motor common-carrier act (Ga. L. 1931, pp. 199, 213) the following provisions: "No subdivision of this State, including cities, municipalities, villages, townships, or counties, shall levy any excise, license, or occupation tax of any nature on said equipment, or the right to operate said equipment or any incidents of said motor-carrier business, or on a motor common carrier." V. C. Ellington Company, claiming to be a private carrier for hire, filed a petition asking that the enforcement of the above municipal ordinance be enjoined. The City of Savannah filed demurrers and an answer. The court granted an interlocutory injunction as prayed, on the ground that the ordinance is in conflict with section 19 of the act of 1927 (Ga. L. 1927, pp. 226, 240), which provides that no additional license shall be charged by a municipality. Georgia Highway Express Inc. and Five Transportation Company, as common carriers, also filed a petition against the City of Savannah, praying similar relief to that sought by Ellington Company. The contentions of the parties are very well stated, as quoted from the court's judgment: "The petitioner contends that the city is attempting to collect a license or tax levied on the business of running buses and trucks for hire. The petitioner contends that the city is inhibited from levying this tax, because the State has prohibited, by the motor-vehicle act of 1931, the levying of such tax. . . The city replies by saying that this 'exempting provision . . is unconstitutional, void, and ineffectual.' . . The city contends that this charge is for 'the use and upkeep of the streets.' Just how this tax can be levied by the city on the apple truck from North Carolina and the orange truck from Florida, for the use and upkeep of the streets, is not clear; but the hope is indulged that the Supreme Court may, with its wisdom and leisure, point out the way in which the apple cart and the orange truck may merrily roll along Old Fort and Yamacraw, and yet show the city how it may levy a tax on them for the use and upkeep of the streets, without violating the legislative inhibition. The temporary injunction is granted until the further order of court, restraining the defendant from levying the tax set out in the petition."

It is apparent that a large number of questions could be discussed, dependent upon the points raised by the several demurrers, and each of these is lengthily and learnedly argued by learned counsel for plaintiffs and defendant. However, in our opinion there are

only two questions, one relating to private carriers for hire, and the other relating to common carriers for hire, which need to be adjudicated. The case of Ellington Company, a private carrier for hire, is controlled by the rulings of this court in *City of Waycross* v. *Bell*, 169 *Ga.* 57 (149 S. E. 641), and *City of Albany* v. *Ader*, 176 *Ga.* 391 (168 S. E. 1). In the *Waycross* case it was said: "It is evident that the General Assembly intended to relieve those engaged in the specified business or occupation from 'municipal license tax,' and thereby the municipality was forbidden to impose either a license fee or occupation tax upon the business of the defendants in error; and that portion of the tax ordinance of the municipality attempting to impose a tax upon the business exempted from municipal taxation by the General Assembly was ineffectual and invalid. The ordinance of the municipality must yield to the higher authority of the legislature of the State." The legislative act there involved was par. 75 of sec. 2 of the general tax act of 1927 (Ga. L. 1927, pp. 56, 80), declaring that the motor-buses referred to "shall be exempt from local municipal license tax." In the *Ader* case the court had under consideration an ordinance of the City of Albany, very similar in its main features to the ordinance now before us, and designed to effect the same purpose,—that of segregating a fund for maintaining and repairing the streets subject to the unusual strain of automotive transportation, and in this case section 18 of the motor common-carrier act of 1931 (Ga. L. 1931, pp. 199, 213) was under consideration. One of the terms of section 18 declares that "No subdivision of this State, including cities, municipalities, villages, townships, or counties, shall levy any excise, license, or occupation tax of any nature on said equipment, or the right to operate said equipment or any incidents of said motor-carrier business, or on a motor common carrier." Mr. Justice Beck, delivering the opinion of the court, said: "That the State, at least to the extent to which section 18 of the motor-carriers act goes, has a right of control over streets and street traffic, there can be no doubt. It was a legitimate exercise of a part of the sovereign power of the State, and the municipal authorities must yield to the legislative power. Detailed regulations of the use of the streets of a municipality and many particular uses are left by the legislature to the municipal authorities, and the State laws are silent in regard to such regulations; but the inactivity of the legislature and its si-

lence as to many of these matters does not mean that in the exercise of the sovereignty of the State it may not assume control of the streets of municipalities and the use to which they may be put. Touching many of the matters relating to streets, the legislature may be silent for a long time; but silence is not surrender of its power."

The questions raised as to the unconstitutionality of section 18 of the act of 1931, presented in the instant cases, were decided in the *Ader* case, supra. Section 18 of this act is not unconstitutional on the ground that it refers to more than one subject-matter, or contains matter different from what is expressed in its title. Nor does said section violate art. 1, sec. 1, par. 2 and 3, of the constitution of 1877, which provide that protection to person and property is the paramount duty of government, and shall be impartial and complete; and that no person shall be deprived of life, liberty, or property, except by due process of law.

The two questions which have been dealt with are controlling, and any reference to the minor questions raised by rulings upon special demurrers would be superfluous at this time. The cross-bills of exceptions attack the ordinance upon various constitutional grounds. Since the court is of the opinion that the city ordinance is void for the reasons already stated, it would be unnecessary to give any further reasons, and none more conclusive could be given. Consequently the cross-bills will be dismissed.

*Judgment affirmed on the main bills of exceptions. Cross-bills dismissed. All the Justices concur.*