SOUTHEASTERN GREYHOUND LINES INC. *v.* CITY OF ATLANTA.

182

*Haas & Gambrell,* for plaintiff.

*J. L. Mayson, C. S. Winn, J. C. Savage,* for defendant.

RUSSELL, C. J.    Southeastern Greyhound Lines Inc. filed a petition against the City of Atlanta, praying for injunction against the enforcement of an ordinance providing for the collection of an occupation tax—a license tax, for keeping a bus terminal.    General demurrers were sustained, and the petition was dismissed, and the plaintiff excepted.

The petition is based upon the proposition that the municipal ordinance is unenforceable and void, in that it is in conflict with a law of this State which expressly exempts the occupation and business in which the plaintiff is engaged from municipal occupational taxation of any kind.    The statute upon which the plaintiff relies is that portion of section 18 of the motor common-carrier act approved August 27, 1931 (Ga. L. 1931, pp. 199-213), reading as follows:    "No subdivision of this State, including cities, municipalities, villages, townships, or counties, shall levy any excise, license, or occupation tax of any nature on said equipment, or the right to operate said equipment or any incidents of said motor-carrier business, or on a motor common carrier."    The parts of the municipal ordinance upon which the city relies is as follows:

"Sec. 1.    That, as authorized by the city charter and for the support of the government of the City of Atlanta, for paying the interest on the bonded debt, reducing the bonded debt, supporting and maintaining the public schools, and sustaining the credit thereof, and for other purposes ordinary and contingent, the following taxes are hereby levied and assessed and shall continue in force for and during the fiscal year ending June 30, 1933, and until repealed.

"Sec. 23.    All persons, firms, or corporations engaged in any business, trade, or occupation, specified below, in the City of Atlanta, shall be required to register their various businesses, trades, or occupations and obtain a license, for which he, she, or they shall

pay the amount hereafter set opposite such business, trade, or occupation, to be due and payable on the first day of July, 1932, and ending June 30, 1933, except automobiles, hacks, cabs, drays, and transfer companies, license year to begin January 1st, 1932."

"Sec. 25. All persons, firms, or corporations doing business of any description or character whatever in said city, who are required to register and pay license therefor, who shall refuse or fail to register such business by the 5th day of July, 1932, or those taking out licenses quarterly who fail to refuse to do so by the 5th day after the beginning of the quarter, shall have execution issued against them by the clerk of council, which shall be levied and collected by the marshal as other tax executions. And any person whose duty it shall be to register their business, and who shall fail or refuse to do so, may be arrested and brought before the recorder's court, and, on conviction, fined a sum of not exceeding one hundred dollars and cost, or be imprisoned not exceeding thirty days, or both, in the discretion of the court, for each day such business has been done after the 5th of July, 1932, without registering the same.

"Sec. 26. Any person or persons, firms, or corporations, coming into the city for the purpose of engaging in any business for which a license is required by this ordinance, shall apply to the clerk of council and procure the same before commencing said business; and on failure to do so, the clerk shall issue fi. fa. and place the same in the marshal's hands for collection, the same to be collected as any other fi. fas. for license are collected." Then follows a schedule of fees.

"Sec. 31. In the following schedule of licenses the prices fixed are per annum, unless otherwise provided for. All licenses shall be paid for in advance and are transferable by the clerk of council, except employment and labor agencies, and such licenses as are granted only by the Mayor and General Council, and shall issue for no less time than to the end of current quarter, and the cost of the license for every business begun after the first day of any quarter shall be the same as if the business was begun on the first day of the quarter, except such licenses as are issued by the day, week, or month, as follows: . . Bus Terminals, each, $300."

The only real question involved in this case, as we think after a very careful examination of the authorities cited and thoughtful consideration of the very voluminous arguments in behalf of both

parties to the case, is whether or not the ordinance is nugatory and void because it must yield to the superior power and paramount authority of an act of the General Assembly of this State. If the legislative prohibition forbids cities, municipalities, villages, townships, and counties from levying any excise, license, or occupation tax of any nature on the equipment of a motor common carrier "or any incidents of such motor-carrier business, or on a motor common carrier," it is only necessary to inquire whether the municipal ordinance conflicts with the operation of the legislative mandate. *City of Waycross* v. *Bell,* 169 *Ga.* 57 (149 S. E. 641). If a municipal ordinance impinges upon the territory already occupied by the sovereign State, it is void. Much is said in the argument of the learned city attorney upon one ground of the demurrer based upon the proposition that equity will not intervene or interfere with the execution of criminal process. We fully concur in the general principle that equity will in no case lend its strong arm to restrain or enjoin the prosecution of a crime, when nothing else is involved than arrest and trial. In such a case a court of equity will always leave the matter to the criminal courts. However, a well-known exception is recognized where property rights are involved and one's business and property may be subjected to irreparable damage unless there is speedily afforded relief which only equity can give. Furthermore, there is a line of decisions of this court to the effect that where an ordinance is absolutely void, because in conflict with the constitution, then the ordinance amounts to no law at all, and in such case a court of equity will assume jurisdiction to enjoin its enforcement. *City of Atlanta* v. *Jacobs,* 125 *Ga.* 523, 528 (54 S. E. 534) ; *Green* v. *Hutchinson,* 128 *Ga.* 379 (57 S. E. 353). To these may be added *Zachry* v. *Harlem,* 138 *Ga.* 195 (75 S. E. 4) ; *Burkhart* v. *Fitzgerald,* 137 *Ga.* 366 (5 c) (73 S. E. 583) ; *Fulton Trading Co.* v. *Baggett,* 161 *Ga.* 669 (131 S. E. 358). In the present instance it appears from the petition, when its allegations (admitted to be true for the purpose of demurrer) are compared with the provisions of section 18 of the act of 1931, supra, that the ordinance is absolutely void. As has several times been held by this court, the plaintiff was not required to pay the license tax and thereafter sue for its recovery.

In the recent case of *City of Albany* v. *Ader* 176 *Ga.* 391 (168 S. E. 1), this court had under consideration an ordinance which

purported to levy a street tax for the purpose of maintenance, repair, and upkeep of the streets of the city, and held this ordinance to be void because in conflict with and contravention of the express provisions of section 18 of the act of 1931, supra, citing the previous rulings in *Waycross* v. *Bell,* supra, and *Mayor &c. of Columbus* v. *Flournoy,* 65 *Ga.* 231. Section 18 of the motor common-carrier act was held not to be unconstitutional as referring to more than one subject-matter, or containing matter different from what was expressed in its title. One of the contentions in the case at bar was also dealt with, the court holding that the word "highways" as used in the act of 1931, supra, includes streets. The language which we have quoted from section 18 of the motor common-carrier act, supra, could scarcely be amplified so as to more completely exclude the imposition of any form of taxation by any subdivision of the State. In that act the State reserves to itself alone the right to tax persons and property engaged in the motor-carrier business. Of course this statement does not refer to ad valorem taxes upon tangible property; but as to any occupational tax incident to or resulting from the municipal organization, the legislation of the State is paramount and exclusive. The demurrer to the petition should have been overruled.

*Judgment reversed. All the Justices concur, except*

GILBERT, J., dissenting. No arrest had been made, and no effort had been made to collect the tax by execution. In fact the petitioner had in no way been molested. The allegations are that unless the tax is paid the *law will be* enforced. The court, in my opinion, did not err in sustaining the demurrer to the petition. See the dissenting opinion in *City of Waycross* v. *Bell,* 169 *Ga.* at p. 62 (supra); *Bowden* v. *Georgia Public Service Commission,* 170 *Ga.* 505 (153 S. E. 42); *Walden* v. *Sellers,* 174 *Ga.* 774 (163 S. E. 897).