22065.   BENTON BROTHERS DRAYAGE & STORAGE COMPANY et al. v. MAYOR & ALDERMEN OF THE CITY OF SAVANNAH et al.

ARGUED JUNE 10, 1963—DECIDED JULY 3, 1963.

*John F. M. Ranitz, Jr., Joseph M. Oliver, Oliver & Maner, Pierce, Ranitz & Lee,* for plaintiffs in error.

*Alton D. Kitchings,* contra.

MOBLEY, Justice. ■ Will the fact that a motor common carrier does a minor portion of its business in intra-city hauling using trucks which are principally used in inter-city hauling and which therefore must be registered with the Georgia Public Service Commission bring such motor common carrier within the exemptions of the Motor Common Carriers Act, *Code Ch.* 68-6, thus permitting a city to tax its trucks and charge a license fee for the right to operate its business?

As to State preemption of the right to tax motor vehicles which come within the provisions of the Motor Common Carriers Act, or to charge a business license fee for the right to operate such trucks, *Code Ann.* § 68-623 provides in part: "No subdivision of this State, including cities, municipalities, villages, townships, or counties shall levy any excise, license, or occupation tax of any nature on said equipment, or the right to operate said equipment or any incidents of said motor carrier business, or on a motor common carrier." Numerous decisions of this court have established that any ordinance attempting to tax vehicles covered by

the act or to charge a business license fee for the right to operate vehicles covered by the act is void. *City of Albany v. Ader,* 176 Ga. 391 (1) (168 SE 1); *Mayor &c. of Savannah v. Ellington Co.,* 177 Ga. 149 (1, 2) (170 SE 83); *Southeastern Greyhound Lines v. City of Atlanta,* 177 Ga. 181 (1) (170 SE 43); *Ellington Co. v. City of Macon,* 177 Ga. 541 (1) (170 SE 813); *Acme Freight Lines v. City of Vidalia,* 193 Ga. 334 (18 SE2d 540); and see *City of Waycross v. Bell,* 169 Ga. 57 (1) (149 SE 641).

The principal question left for decision therefore is whether plaintiffs' trucks are exempted from or covered by the act. The vehicles to which the Motor Common Carriers Act does not apply are set forth in *Code* § 68-602 as amended by Ga. L. 1958, pp. 688-89 (*Code Ann.* § 68-602). The amendatory act of 1958 states in its title that its purpose is to amend *Code* § 68-602 exempting certain vehicles from the act such as to *remove certain vehicles from that exemption.* Thus, the purpose of the General Assembly in passing the amendatory act was to narrow the classes of vehicles exempt from the act and subject to the provisions of the act certain vehicles which previously had been exempt therefrom. The manner in which this was accomplished was to strike in its entirety paragraph (b) of § 68-602 and insert in lieu thereof a new paragraph (b) which is identical to the original paragraph except in a few important particulars. For convenience of discussion we shall synthesize the old and new paragraphs (b) into one composite, indicating the words which were omitted from the paragraph as amended by use of brackets and the words which were added by the amendatory act by use of italic print. The synthesized paragraph (b) reads as follows: "Taxicabs, drays, trucks, busses, and other motor vehicles, which [generally] operate [exclusively] within the corporate limits or police limits of cities and towns and are subject to regulation by the governing authorities of such cities or towns or by the commission; and this exception shall apply *to taxicabs and busses* even though such vehicles may in the prosecution of their regular business occasionally go beyond the corporate limits of such towns or cities, provided they do not operate to or from fixed termini outside of said limits."

The differences between the original *Code* § 68-602 (b) and paragraph (b) as amended by the act of 1958 are readily apparent and, as applied to trucks which operate without as well as within the defined limits, the inference could not be stronger that the General Assembly intended by the amendatory act to change the test by which their coverage under or exemption from the Motor Common Carriers Act, and hence their amenability to the taxing power of municipalities, will be determined. Under the original paragraph (b), a truck which operated both within and without the defined limits was exempt from the act if it *generally operated exclusively* within the defined limits, although it might *occasionally* go beyond those limits, provided it did not operate from fixed termini outside the limits. This was a test of exemption using the criterion of where—within or without the defined limits—a preponderance of the operation took place. Under the amended paragraph (b) a truck is exempt only if it *operates within* the defined limits, provided it does not operate from fixed termini outside the limits, which necessarily implies that if it operates outside those limits it is subject to the act. As the allegations of plaintiffs' petition affirmatively show that plaintiffs' trucks here in question operate without as well as within the limits of the City of Savannah, it being immaterial where they *generally* operate, the trucks are subject to the Motor Common Carriers Act and the trucks themselves and the right to operate them are not amenable to the taxing power of the City of Savannah. *Code Ann.* § 68-602 (b); *Code Ann.* § 68-623; *Acme Freight Lines v. City of Vidalia*, 193 Ga. 334, supra.

The City of Savannah strongly relies upon the reasoning of the Court of Appeals in *Cherry v. City of Atlanta*, 47 Ga. App. 719 (171 SE 463), affirmed by this court without opinion in *Cherry v. City of Atlanta*, 179 Ga. 249 (175 SE 563). The reasoning of that decision affirming defendant Cherry's conviction for doing business without a license can not be applied in the present case because the 1958 amendment to *Code* § 68-602 (Ga. L. 1958, pp. 688-89) exempts trucks used as common carriers only if they never venture beyond the defined limits, whereas the former acts relating to common carriers provided exemptions for trucks which generally operated within defined limits

although they occasionally might have gone beyond those limits.

■ The only other question presented is whether or not plaintiffs may enjoin the prosecution by the city of their agents and employees due to nonpayment of the taxes. The City of Savannah does not seriously contend, as indeed it should not, that *Code* § 55-102, which prohibits equity's interference with the enforcement of the criminal law, applies in the case at bar, for it is clear that property rights of the plaintiff carriers are here being subjected to irreparable injury, and equity will take jurisdiction to protect these rights of property even though an effect of that assumption of jurisdiction might well be to enjoin the enforcement of the penal provisions of the city ordinance. *Moultrie Milk Shed v. City of Cairo*, 206 Ga. 348 (1) (57 SE2d 199).

■ As the petition states a cause of action for the relief sought, the trial court erred in sustaining the general demurrers to it.

*Judgment reversed. All the Justices concur.*